NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM THOMAS, | Civil Action No. 13-4150 (FLW) |
| Plaintiff, | |
| v. | **OPINION** |
| CHARLES E. WARREN, JR., | |
| Defendant. | |

**Wolfson**, District Judge:

Plaintiff William Thomas ("Plaintiff"), an inmate confined at New Jersey State Prison, Trenton, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983;[1] he is alleging violations of his constitutional rights. Based on Plaintiff's affidavit of indigence, the Court will grant his application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). For the reasons expressed below, Plaintiff's complaint will be dismissed with leave to amend his denial of clothing and food claims.

I.  BACKGROUND

Plaintiff asserts that, after prison officials discovered that he had inserted an asthma inhaler into his rectum, he was disrobed and placed into a so-called "dry cell" with no running water.[2] (See Compl. at 6.) Plaintiff alleges that he remained absolutely naked throughout the entire period when

---

[1] Plaintiff submitted his prison account statement on July 16, 2013 (ECF No. 2), hence completing his in forma pauperis application.

[2] It appears that the asthma inhaler was duly removed from Plaintiff's rectum.

he was housed in that cell – which, seemingly, was from May 6, 2013, to May 29, 2013, i.e., for twenty-three days.³ (See id.)

Plaintiff concedes that he was provided with drinking water while held in the dry cell, but he alleges that he had to "beg" and "scream" in order "to get it." (See id.) Plaintiff also asserts that he had not been "fed" throughout the entire period of being housed in the dry cell. (Id.) In addition, he alleges that the dry cell was insufficiently lighted and that he was denied outdoor recreation and social interaction with the general population inmates. Plaintiff also expresses concerns about the medical problems he might potentially develop in the future as a result of being housed in the dry cell.⁴ (See id. at 6-8.) Plaintiff names the warden as Defendant in this action, asserting that he was placed in the dry cell pursuant to the warden's express order. (See id. at 4.) In addition, he asserts that he has filed inmate grievance forms to no avail – they have not been responded to by the warden. For these alleged wrongs, Plaintiff seeks monetary damages and unspecified "sanctions" against the warden on behalf of all inmates. (See id. at 8.)

II. STANDARDS FOR SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915(A)(b), or brings a claim with

---

³ It is not clear from the complaint exactly how long Plaintiff remained naked in the cell. It appears from the body of the complaint, however, that his housing in the dry cell ended on May 29, 2013.

⁴ Plaintiff further indicates in the complaint that he has been evaluated and monitored by a psychiatrist. (See Compl. at 6.)

respect to prison conditions, see 28 U.S.C. § 1917e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal because Plaintiff is a prisoner proceeding in forma pauperis and he is challenging his prison conditions.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim,[5] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

---

[5] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)); Mitchell v. Beard, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

III.     DISCUSSION

It appears from the complaint that Plaintiff is attempting to raise various conditions of confinement claims. In order to succeed on an Eighth Amendment conditions of confinement claim, the plaintiff must demonstrate that the defendant denied him "the minimal civilized measure of life's necessities" while acting with "deliberate indifference" to the plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Fantone v. Herbik, No. 13-1644, 2013 U.S. App. LEXIS 11811, at *9 (3d Cir. June 12, 2013). Notably, only "extreme deprivations" are sufficient to support a claim for unconstitutional conditions of confinement.[6] Fantone, No. 13-1644, 2013 U.S. App. LEXIS 11811, at *9 (quoting Hudson v. McMillian, 503 U.S.1, 8-9 (1992)).

Under that standard, the bulk of Plaintiff's challenges are facially without merit. For a prisoner not provided *any* access to fluids, the United States Court of Appeals for the Third Circuit has found that such a deprivation could be "sufficiently serious" to sustain a claim. Collier v. Martinez, 474 F. App'x 870, 874 (3d Cir. 2012). However, the Court of Appeals has further noted, "[i]f [a plaintiff] had access to adequate hydration during the period in question, even in conjunction with meals he otherwise did not desire to eat, *his claim would necessarily fail*, as he would not be able to show that the complained of deprivation was 'sufficiently serious.'" Id. at n.5 (emphasis added).

---

[6] Plaintiff's complaint mentions a state prison regulation. (See Compl. at 4.) However, even if the Court were to presume that such regulation was violated, that violation cannot support a claim of constitutional magnitude. Accord Virginia v. Moore, 553 U.S. 164, 176 (2008) (holding that an action permissible under a federal constitutional amendment but prohibited by more exacting state law does not violate the U.S. constitution). Moreover, in the event Plaintiff wished to raise solely a state law claim, his complaint would be subject to dismissal for lack of subject matter jurisdiction. See 28 U.S.C. §§ 1331, 1332 (limited bases for federal jurisdiction).

Here, Plaintiff concedes that he had been given water regularly. Thus, with respect to access to water, Plaintiff fails to allege a "sufficiently serious" deprivation even if Plaintiff found demeaning the manner in which he was forced to request the water. See Calhoun v. Wagner, No. 93-4075, 1997 U.S. Dist. LEXIS 10121 (E.D. Pa. July 14, 1997) (no constitutional violation where the inmate's cell was without water but he was provided fluids three times a day); accord Jackson v. Kane County, No. 09-4154, 2010 U.S. Dist. LEXIS 6154, at *7 (N.D. Ill. Jan. 26, 2010) ("Drawing on judicial experience and common sense, the court finds that a lack of running water . . . , though uncomfortable by itself, is not a serious deprivation of a basic human need") (internal citation omitted). Therefore, the supply of water claim will be dismissed.

In addition, Plaintiff's lack of recreation challenge is without merit. While the denial of exercise or recreation may, under certain circumstances, result in a violation of the Eighth Amendment, see Fantone v. Herbik, 2013 U.S. App. LEXIS 11811, at *9 (citing Peterkin v. Jeffes, 855 F.2d 1021, 1031-33 (3d Cir. 1988)), "a temporary denial of outdoor exercise [without detrimental] medical effects is not a substantial deprivation" for the purposes of the Eighth Amendment analysis. May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). In other words, to assert a sufficient deprivation, the inmate must state facts showing that the denial of recreation was such that it caused injury to the inmate's ability to control his muscular functions or to maintain his range of physical motions. See Cary v. Rose, 902 F.2d 37 (7th Cir. 1990) (where the inmates alleged that they were denied adequate exercise and recreation but admitted that they had room in their cells and in the hallway to run in place or perform calisthenics, their allegations could not amount to a constitutional claim because, unless extreme and prolonged, lack of exercise could not be equated to a medically-threatening situation); see also Diaz v. Cumberland Cty, No. 10-3932, 2010 U.S. Dist.

5

LEXIS 101449, at *14-16 (D.N.J. Sept. 23, 2010) (dismissing a claim by pretrial detainee asserting that he was afforded only one hour of yard recreation per day); Ellis v. Crowe, No. 09-3061, 2009 U.S. Dist. LEXIS 125154, at *36 (E.D. La. Dec. 18, 2009) (denial of recreation claim should be dismissed if the facts the inmate alleges do not show that he was so deprived of recreation that he suffered a physical injury, such as muscle atrophy or loss of range of motion).

Moreover, to the extent that Plaintiff is alleging that he may experience medical problems in the future, such allegations are speculative. See Hood v. Cumberland County Dep't of Corr., No. 12-6395, 2013 U.S. Dist. LEXIS 52907, at *13 (D.N.J. Apr. 11, 2013). "Speculation as to what might or might not happen in the future" cannot serve as a basis for a valid claim. Dawson v. Frias, No. 09-6050, 2010 U.S. Dist. LEXIS 30513 at *8 (D.N.J. Mar. 30, 2010) (citing Rouse v. Pauliilo, No. 05-5157, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (dismissing speculative claim and citing Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)); see also Pilkey v. Lappin, No. 05-5314, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiff's [anxiety regarding future events] fail[s] to state a claim upon which relief may be granted"); Patterson v. Lilley, No. 02-6056, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003).

Plaintiff's challenge based on poor lighting also fails to state a viable claim, see Vasquez v. Frank, No. 07-3965, 290 F. App'x 927, 930 (7th Cir. 2008) ("24-hour lighting involving a single, 9-watt fluorescent bulb does not objectively constitute an 'extreme deprivation'"),[7] as does Plaintiff's challenge based on the lack of socialization with the general population inmates. See Sandin v.

---

[7] Compare Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) (prisoner's allegations of filth, rodents, insect infestation, human waste, broken windows, lack of lighting, heat, toilet paper and contaminated drinking water sufficiently stated an Eighth Amendment violation).

Conner, 515 U.S. 472, 480 (1995) (housing in a segregated unit is constitutional because the Due Process Clause confers no liberty interest in freedom from state action taken "within the sentence imposed") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (interests protected by the Due Process Clause are limited only to the restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life") (quoting Sandin, 515 U.S. at 484); Enigwe v. Nugent, No. 92-5339, 1993 U.S. Dist. LEXIS 4860 (E.D. Pa. Feb. 25, 1993) (exhaustively detailing why inmates have no constitutional or statutory right to be housed in the general population of a prison).[8]

The foregoing leaves the Court with only two of Plaintiff's challenges, i.e., that Plaintiff has not been "fed" for at least twenty three consecutive days, and that he remained naked for the same period. (Compl. at 6-9.) On the one hand, if true, the denial of food challenge certainly states a

---

[8] To the extent that Plaintiff challenges the warden's lack of response to Plaintiff's grievances, such a challenge would also fail to state a viable claim. It is well established that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997). Moreover, a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 F. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 ((7th Cir. 1996)). Finally, to the extent Plaintiff seeks "sanctions" against the warden on behalf of other inmates, Plaintiff lacks standing to litigate any claim asserted on behalf of those inmates, since his complaint fails to establish that the inmates lack capacity to litigate their own challenges or that he has a personal stake in the other inmates' claims. See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 102-103 and n.5 (1998); Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990); Hassine v. Jeffes, 846 F.2d 169, 176 (3d Cir. 1988) ("Standing to assert a claim requires that the plaintiff demonstrate personal interest in the outcome of the litigation") (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979), and citing Bender v. Williamsport, 475 U.S. 534 (1986)).

sufficient claim, and the allegations of nakedness might also pass muster under Iqbal.[9] But, on the other hand, Plaintiff's allegations of being kept constantly naked and not fed at all, for over three weeks, smack of implausibility. Taken at face value, his allegations suggest that he was denied any food and body coverage for at least twenty-three consecutive days and, perhaps, longer.[10] At least

---

[9] Since Plaintiff made references to his May 15, 2013, examination by a psychiatrist (see Compl. at 6), it is possible that Plaintiff is alleging that he was kept naked from May 6 to May 15, 2013 (and, perhaps, thereafter) because he was potentially deemed mentally infirm (and, thus, a danger to himself) as a result of his insertion of an asthma inhaler into his rectum. See Symposium: Reconsidering the Consequences of an Insanity Acquittal, 31 N.E. J. on Crim. & Civ. Con. 3, 10-11 (2005) (mentally ill inmates are often kept naked); see also Stacey Singer, Judge getting cost-saving results; Approaches that treat mental illness as a disease, not a crime, prove successful, Palm Beach Post (Fla), §A, p. 1A (June 9, 2013) (same). If so, the analyses of Plaintiff being naked might differ with regard to the periods when he was presumed mentally ill and after he was deemed to be of sound mind, that is, if such determination was ever made. See, e.g., Gruenberg v. Gempeler, 697 F.3d 573 (7th Cir. 2012) (where the defendants kept an inmate naked – after he seized a set of keys and swallowed it – the judgment in favor of the defendants was affirmed because the inmate's conditions of confinement were warranted); compare Trammell v. Keane, 338 F.3d 155, 164-65 (2d Cir. 2003) (affirming dismissal of a mentally sound inmate's claim that he was kept virtually naked for a "prolonged period" of time because the inmate was neither exposed to winter weather, sub-zero temperatures or the elements, nor did he lack adequate heat, hence the inmate could not show that the defendants had the required mental state of deliberate indifference to the inmate's health and safety).

[10] Such conclusion appears particularly warranted in light of the fact that Plaintiff himself placed quotation marks around the word "fed" when he stated "I'm not being 'fed' by the staff here." (Compl. at 6.) Also, while Plaintiff states that he lost weight being housed in the dry cell, (see id.) the period of complete starvation suggested by the complaint was so prolonged that Plaintiff should have been in a near-death condition at the time the complaint was filed. See How your body fights to keep you alive when you're starving, Newstex (Sept. 10, 2012) ("People can die of starvation in as short as a three-week span"); Andrew Buncombe, Hunger Striker's Declaration of Love Angers Her Supporters, The Independent (London) at 38 (Sept. 17, 2011) ("[A]fter about three weeks [people] will usually enter the starvation phase - when their body begins withdrawing fat reserves from vital organs. At this stage, death is imminent"); Joann Loviglio, Court Hears Case of Ailing Haitian Slated for Deportation, Associated Press State & Local Wire (Feb. 27, 2008) ("[The inmate] will be dead within three weeks from starvation . . . , his attorney said"); Dorothy Simons, Let Me Die in My Way, Herald Sun (Melbourne, Australia) at 18 (July 9, 2003) (detailing how patients denied nutrition for three weeks die of starvation).

one court has rejected similar allegations as implausible. See Atkins v. City of Chicago, 631 F.3d 823 (7th Cir. 2011).[11]

In Atkins v. City of Chicago, an inmate asserted that he was "placed in a cell naked without a mattress, sheets, blankets" for thirty seven days and, in addition, that he was "denied . . . food" for four days. Id. at 829-30. While noting that "[d]epriving a person of food for four days would impose a constitutionally significant hardship," id. at 830 (citing Reed v. McBride, 178 F.3d 849, 853-54 (7th Cir. 1999); Foster v. Runnels, 554 F.3d 807, 814-15 and n.5 (9th Cir. 2009); Simmons v. Cook, 154 F.3d 805, 808 (8th Cir. 1998)), the Seventh Circuit dismissed Atkins' complaint upon finding his allegations "*highly* implausible," albeit not completely "impossible." Id. at 830-31 (emphasis in original) (observing that Atkins' claim that he was forced to remain naked for thirty seven days or "even . . . intermittently . . . naked" during that period was "hard to believe" and sounded "fantastical[]").

Here, mindful of the Third Circuit's observation that "[s]ome improbable allegations might properly be disposed of [on the record], but to dismiss them as frivolous [as pled,] without any factual development[,] is to disregard the age-old insight that many allegations might be 'strange, but true; for truth is always strange, [s]tranger than fiction,'" this Court finds the Atkins drastic measure of prejudicial dismissal unwarranted. Brown v. Philip Morris, Inc., 250 F.3d 789, 811 (3d Cir. 2001) (quoting Denton v. Hernandez, 504 U.S. 25, 33 (1992) (quoting, in turn, Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan, & W. Pratt eds. 1977)). However, sharing in the *concerns* expressed in Atkins, this Court will allow Plaintiff an opportunity to clarify and detail

---

[11] This Court's research has not revealed any Third Circuit authority on this issue, thus, the Court finds it prudent to look for persuasive guidance outside the Circuit.

the exact facts underlying his claims. To be clear, Plaintiff should omit from his amended pleading any use of poetic license, or rhetoric included for dramatic effect. See Clauso v. Glover, Nos. 12-5601, 12-3971, 12-3969, 09-5306, 2012 U.S. Dist. LEXIS 139205, at *21-22 (D.N.J. Sept. 26, 2012) ("[Plaintiff's] 'poetic license' [statements] are not a basis for relief. Simply put, dry facts stated in a clear and concise pleading speak volumes for the purposes of any legal proceeding, while eloquent poetic 'nothings' are invariably dismissed as pure rhetoric. Therefore, this Court strongly urges [Plaintiff] to reduce his future submissions . . . to simple statements of fact and legal claims"). In this connection, "[t]he Court takes this opportunity to remind Plaintiff that his amended complaint, as his original [c]omplaint, are documents executed under penalty of perjury and, therefore, these allegations should state facts which Plaintiff believes, in good faith, to be true." Royal v. Rutherford Police Dep't, No. 11-4862, 2011 U.S. Dist. LEXIS 133153, at *20, n.7 (D.N.J. Nov. 17, 2011).

IV. CONCLUSION

For the foregoing reasons, Plaintiff's application to proceed in this matter in forma pauperis will be granted, and his complaint will be dismissed. All his challenges (other than those asserting that Plaintiff was kept completely naked for at least twenty three days, and that he was denied any food or nutrients for the same period) will be dismissed with prejudice.

Plaintiff's challenges asserting the complete lack of body coverage and complete denial of food or other nutrients for at least twenty three days will be dismissed without prejudice. Plaintiff will be directed to file an amended complaint elaborating solely on these two challenges.[12]

---

[12] Toward that end, Plaintiff shall detail such facts as the exact length of the periods when he was denied any coverage for his body or when he was denied any form of nutrition. He

An appropriate Order follows.

    s/Freda L. Wolfson
**Freda L. Wolfson,**
United States District Judge

Dated: July 29, 2013

---

should also clarify whether, during the period of his complete nakedness, he was exposed to the elements. Since the weather in Trenton, New Jersey, varied between 91° to 68°F during the day, and between 76° and 45°F during the night, see http://www.accuweather.com/en/us/trenton-nj/08611/may-weather/329551, the Court doubts Plaintiff could have been exposed to external sub-zero temperatures during his stay in the dry cell. (Rule 201(b) . . . permits a district court to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either[:] (1) generally known within the territorial jurisdiction of the trial court[;] or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)).